## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TENGASCO, INC.**                                   **CIVIL ACTION**

**VERSUS**                                           **NO. 14-2184**

**SARAH JEWELL,** *Secretary of the*                 **SECTION "B"(2)**
*United States Department of the*
*Interior,* **ET AL.**

### ORDER AND REASONS

Before the Court are cross-motions for summary judgment filed by Plaintiff, Tengasco, Inc. and Defendants, the United States Department of the Interior, and Bureau of Safety and Environmental Enforcement.[1] The parties have filed responses and replies.[2] The cross-motions, set for submission on August 5, 2015, are before the Court on the pleadings, without oral argument. After careful consideration of the cross-motions, responses, replies, competent summary judgment evidence, record, and applicable law, **IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**, Plaintiff's Motion for Summary Judgment is **DENIED**, and Plaintiff's suit is **DISMISSED**.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Tengasco, Inc. ("Tengasco") challenges a civil penalty assessment levied by the Bureau of Safety and

---

[1] Rec. Docs. No. 25, 28.
[2] Rec. Docs. No. 30, 33, 34, 35, 37.

Environmental Enforcement ("BSEE"), and affirmed by the Interior Board of Land Appeals of the U.S. Department of the Interior ("IBLA" or "Department").[3] Tengasco's claims challenge a federal agency action and are based upon the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331, *et seq.*, the Administrative Procedure Act (APA), 5 U.S.C. § 551, *et seq.*, and the U.S. Constitution.[4]

Tengasco is the lessee and facility operator of a lease on the outer continental shelf in the Gulf of Mexico, namely, the High Island Block 176 Platform B.[5] On February 23, 2011, BSEE conducted an onsite inspection of the platform facility and determined that certain prior testing records were not available at the time for review on the platform.[6] These included: (1) testing records from June 9, 2010 to February 23, 2011 for the surface controlled subsurface safety valves associated with five wells on the platform; and, (2) testing records from September 1, 2010 to January 25, 2011 for other production safety devices on the platform.[7]

During the time period at issue, Tengasco had contracted with Rhino Offshore, Ltd., to conduct and document the required

---

[3] Rec. Doc. No. 1.
[4] Rec. Doc. No. 1 at 1.
[5] Rec. Doc. No. 25-2 at 1; Rec. Doc. No. 28-4 at 6; A.R. 003.
[6] Rec. Doc. No. 25-2 at 1.
[7] Rec. Doc. No. 25-2 at 2.

testing.[8] Tengasco contends that undisputed evidence in the administrative record shows that the required testing was in fact conducted.[9] However, by letter dated October 26, 2011, BSEE informed Tengasco of its intention to impose 22 separate civil penalties totaling $476,000 resulting from the onsite inspection.[10] BSEE divided the 22 proposed civil penalties into 8 different categories, each of which was associated with an Incident of Non-Compliance ("INC") that the BSEE field inspector had issued.

Tengasco responded by letter dated November 22, 2011, requesting a meeting to discuss the proposed civil penalties and asking for additional time to respond due to difficulties in obtaining records from Rhino Offshore.[11] Tengasco filed a response and made a presentation to BSEE staff.[12] Tengasco also submitted an affidavit of Randy Walker, a former Rhino employee who worked as an operator-foreman on the platform from June 1, 2010 through December 21, 2010.[13] In his affidavit, Mr. Walker stated that the required safety tests were in fact conducted, that he was personally present on the platform during the tests, and that he completed and submitted the necessary forms to

---

[8] Rec. Doc. No. 25-2 at 2.
[9] Rec. Doc. No. 25-3 at 8.
[10] Rec. Doc. No. 25-3 at 9.
[11] Rec. Doc. No. 25-3 at 9; A.R. 289-334.
[12] Rec. Doc. No. 25-3 at 9; A.R. 289-334.
[13] Rec. Doc. No. 25-3 at 9; A.R. 354-358: A.R. 302-05.

3

document the completion of the tests.[14] Attached to the affidavit were recompleted testing records for the periods at issue.[15] Tengasco also submitted flight logs from two helicopter companies purportedly showing that Rhino inspectors, including Mr. Walker, made regular trips to the platform during the period June 2010 to December 2010. On February 1, 2012, BSEE issued a subpoena to Rhino for all testing records associated with the safety devices in question from June 2010 through February 2011.[16] In response, Rhino submitted several documents, including a Safety Compliance Inspection Report for the Platform dated September 13, 2010.[17]

On July 20, 2012, the BSEE Reviewing Officer issued its decision, reducing the number of penalties, for a civil penalty assessment total of $386,000.[18] Tengasco appealed BSEE's decision to the IBLA, which issued a final decision on June 23, 2014, affirming BSEE's order in full.[19] Following the IBLA's affirmance of the BSEE decision, Tengasco filed this action for judicial review against defendants, Sarah Jewell, in her official

---

[14] Rec. Doc. No. 25-3 at 10.

[15] Rec. Doc. No. 25-3 at 9-10.

[16] Rec. Doc. No. 1 at 6.

[17] Rec. Doc. No. 1 at 6.

[18] Rec. Doc. No. 25-3 at 10. Specifically, "BSEE (i) reduced the testing periods allegedly missed in INC No. P-303 from four to three, thereby reducing the INC No. P-303 penalty from $80,000 to $60,000; (ii) reduced the testing periods allegedly missed in INC No. P-304 from four to three, thereby reducing the INC No. P-304 penalty from $40,000 to $30,000; (iii) reduced the testing periods allegedly missed in INC No. P-307 from four to three, thereby reducing the INC No. P-307 penalty from $100,000 to $75,000; and (iv) reduced the testing periods allegedly missed in INC No. P-308 from four to three, thereby reducing the INC No. P-308 penalty from $140,000 to $105,000."

[19] Rec. Doc. No. 25-2 at 4; *Tengasco, Inc.*, 184 IBLA 367 (June 23, 2014).

4

capacity as Secretary of the U.S. Department of Interior, and Brian Salerno, in his official capacity as Director of the BSEE.[20]

The parties agreed that this case should be resolved by dispositive motions, and jointly proposed a "Joint Case Management Statement," providing a briefing schedule whereby the administrative record would be filed, followed by cross-motions for summary judgment, and reply briefs.[21] The Joint Case Management Statement was adopted by the Court.[22] Briefing is now complete and the cross-motions for summary judgment are ripe for decision.[23]

## II.   LAW & ANALYSIS

### a. The Outer Continental Shelf Lands Act

The Outer Continental Shelf Lands Act (OCSLA) governs federal offshore oil and gas leasing and declares as national policy that "the outer Continental Shelf is a vital national resource reserve held by the Federal Government for the public,

---

[20] Rec. Doc. No. 1 at 3.

[21] Rec. Doc. No. 19.

[22] Rec. Doc. No. 21.

[23] Rec. Doc. No. 19 at 2:
   a. Federal Defendants file administrative record February 6, 2015
   b. Plaintiff files opening motion for summary judgment March 20, 2015
   c. Federal Defendants file a single cross-motion for summary judgment/opposition brief May 1, 2015
   d. Plaintiff files reply brief in support of its motion and in opposition to Federal Defendants' motion June 5, 2015.
   e. Federal Defendants file a single reply brief in support of their cross-motion for summary judgment July 10, 2015.
   The Court notes that Tengasco has filed additional pleadings in this matter. Rec. Docs. No. 33, 34.

which should be made available for expeditious and orderly development, subject to environmental safe-guards, in a manner which is consistent with the maintenance of competition and other national needs." 43 U.S.C. § 1332(3). The OCSLA further provides that, "operations in the outer Continental Shelf should be conducted in a safe manner by well-trained personnel using technology, precautions, and techniques sufficient to prevent or minimize the likelihood of blowouts, loss of well control, fires, spillages...." 43 U.S.C. § 1332(6).

The OCSLA, 43 U.S.C. § 1350 provides:

> (b) Civil penalties; hearing
>
> (1) Except as provided in paragraph (2), if any person fails to comply with any provision of this subchapter, or any term of a lease, or permit issued pursuant to this subchapter, or any regulation or order issued under this subchapter, after notice of such failure and expiration of any reasonable period allowed for corrective action, such person shall be liable for a civil penalty of not more than $20,000 for each day of the continuance of such failure. The Secretary may assess, collect, and compromise any such penalty. No penalty shall be assessed until the person charged with a violation has been given an opportunity for a hearing...
>
> (2) If a failure described in paragraph (1) constitutes or constituted a threat of serious, irreparable, or immediate harm or damage to life (including fish and other aquatic life), property, any mineral deposit or the marine, coastal or human environment, a civil penalty may be assessed without regard to the requirement of expiration of a period allowed for corrective action.

Pursuant to the OCSLA, the Department of the Interior adopted safety regulations, including rules requiring installation, inspection, and testing of safety decisions on OCSLA rigs to minimize the potential for catastrophic events on the rig. 30 C.F.R. § 250.804 ("Production safety-system testing and records"). The regulations provide that safety system devices shall be successfully inspected and tested by the lessee at specified intervals. 30 C.F.R. § 250.804 (a)(1)-(12). Additionally, the "lessee shall maintain records for a period of 2 years for each subsurface and surface safety device installed...These records shall show the present status and history of each device, including dates and details of installation, removal, inspection, testing...". 30 C.F.R. § 250.804(b).

b. The Administrative Procedure Act

The Administrative Procedure Act authorizes judicial review of final agency action. 5 U.S.C. § 704; *see id.* § 702 ("A person suffering a legal wrong because of agency action...is entitled to judicial review thereof.").[24] Per the APA, 5 U.S.C. § 706(2)(a), federal courts are empowered to "hold unlawful and set aside agency action, findings, and conclusions" if they fail

---

[24] Agency action is final if it is the consummation of the agency's decision making process and rights or obligations have been determined. *E.g. Center for Auto Safety v. National Highway Traffic Safety Admin.*, 452 798, 806 (D.C. Cir. 2006).

to conform with any of six specified standards. 5 U.S.C. § 706(2); *Marsh v. Oregon*, 490 U.S. 360, 375, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). Under the APA, the administrative record is reviewed to determine whether the challenged agency action was arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law, contrary to constitutional right, in excess of statutory jurisdiction, authority or limitation, or without procedure required by law, or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A-E).

Ordinarily, review of administrative decisions is to be confined to consideration of the decision of the agency...and of the evidence on which it was based. *Marsh*, 490 U.S. at 331; *Federal Power Commission v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 96 S.Ct. 579, 46 L.Ed.2d 533 (1976). The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court. *Marsh,* 490 U.S. at 331. If the decision of the agency 'is not sustainable on the administrative record made, then the...decision must be vacated, and the matter remanded...for further consideration.' *Federal Power Commission*, 423 U.S. at 331.

c. Summary Judgment Standard of Review over Final Agency
   Decisions

Where the Court is reviewing the decision of an administrative agency, a motion for summary judgment stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the Court's review. As a result, the movant's burden in prevailing on summary judgment is similar to his ultimate burden on the merits: preponderance of the evidence. *See Butts v. Sec'y of Health and Human Services*, 706 F.2d 107, 108 (2nd Cir. 1983). Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based on the administrative record even though the Court does not apply the standard of review set forth in Fed. R. Civ. P. 56. *Tex. Comm. on Nat. Res. v. Van Winkle*, 197 F.Supp.2d 586, 595 (N.D. Tex. 2002)(quoting *Fund for Animals v. Babbitt*, 903 F.Supp.96, 105 (D. D.C.1995)).

When reviewing administrative agency decisions, the function of the district court is to determine whether as a matter of law, evidence in the administrative record permitted the agency to make the decision it did, and summary judgment is an appropriate mechanism for deciding the legal question of whether an agency could reasonably have found the facts as it did. *Id*. (quoting *Sierra Club v. Dombeck*, 161 F.Supp.2d 1052,

1064 (D. Ariz. 2001)). Although an agency's legal conclusions are reviewed *de novo*, the court's overall review is "highly deferential to the administrative agency whose final decision is being reviewed." *Buffalo Marine Services Inc. v. United States*, 663 F.3d 750 (5th Cir. 2011).

### d. Arguments of the Parties

Tengasco moves the Court for summary judgment vacating the final decision of the IBLA affirming the decision of the BSEE, ordering Tengasco to pay $386,000 in civil penalties for alleged violations of 30 C.F.R. § 250.804(a). The core of Tengasco's challenge before the Court concerns the sufficiency of the administrative record to support the civil penalties imposed. Tengasco argues that "the IBLA's decision is arbitrary...an abuse of discretion, and unsupported by the administrative record," in violation of the OCSLA, the APA and due process.[25] Tengasco argues that the undisputed evidence in the administrative record shows that the requisite testing was in fact conducted, that there is no evidence that the safety devices and other equipment at issue did not work properly or presented a threat of any kind, and further that the

---

[25] Rec. Doc. No. 1 at 7; Rec. Doc. No. 25-3 at 8.

unavailability of testing records onsite at the platform should not form the basis for the imposed civil penalties.[26]

Further, Tengasco argues that neither BSEE nor IBLA gave any reasons for imposing penalties over $3,000.[27] Tengasco urges the court to set aside the IBLA's decision with directions for no penalties to be imposed against Tengasco.[28] Alternatively, Tengasco requests the Court vacate the IBLA's decision and remand the matter for a redetermination and reduction of any penalties, to no more than $3,000 per penalty and to no more than four penalties.[29]

Defendants contend that Plaintiff was properly fined for failing to conduct required safety testing in accordance with the OCSLA.[30] Plaintiff's records were reasonably assessed as not credible, and failed to document the required testing.[31] In considering the evidence submitted, BSEE factored in the severity of the violations and Plaintiff's compliance history, and ultimately imposed the minimum per-violation penalty permitted within each violation category.[32] According to Defendants, this conclusion, and the decision to impose civil

---

[26] Rec. Doc. No. 25-3 at 8.
[27] Rec. Doc. No. 25-3 at 6.
[28] Rec. Doc. No. 25 at 1.
[29] Rec. Doc. No. 25 at 1.
[30] Rec. Doc. No. 28-4 at 4.
[31] Rec. Doc. No. 28-4 at 4.
[32] Rec. Doc. No. 28-4 at 9.

penalties in their respective amounts, is supported by substantial evidence, was neither arbitrary nor capricious, and must be upheld.[33]

Thus, the issue before the Court is whether the civil penalties levied by the BSEE, and affirmed by the Department, should be overturned for findings that are arbitrary, capricious, or unsupported by substantial evidence on the whole record, or as an abuse of discretion.

## The Arbitrariness Standard

As the U.S. Supreme Court observed in *Citizens to Preserve Overton Park, Inc. v. Volpe*, when making the factual inquiry concerning whether an agency decision was "arbitrary or capricious," the reviewing court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), *overruled on unrelated grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

The U.S. Supreme Court succinctly reiterated the arbitrariness test in *National Ass'n v. Defenders of Wildlife*:

An agency's decision will be considered arbitrary only if it has relied on factors which Congress had not intended it

---

[33] Rec. Doc. No. 28-4 at 4.

> to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

551 U.S. 644, 127 S.Ct. 2518, 2529, 168 L.Ed. 2d 467 (2007). "Before concluding that a decision was arbitrary and capricious, a court must be very confident that the decision maker overlooked something important or seriously erred in appreciating the significance of the evidence." *Patterson v. Caterpillar, Inc.*, 70 F.3d 503, 505 (7th Cir. 1995); *see Omnipoint Corp. v. FCC*, 78 F.3d 620,632 (D.C. Cir. 1996). If the agency considers the factors and articulates a rational relationship between the facts found and the choice made, its decision is not arbitrary or capricious. *State of La., ex rel. Guste v. Verity*, 853 F.2d 322, 327 (5th Cir. 1988). The court's inquiry must "be searching and careful," but "the ultimate standard of review is a narrow one." *Id*.

The Court is not to weigh the evidence pro and con, and agency action is to be upheld, if at all, on the basis of the record before the agency at the time that it made its decision. *Id*. at 327 (citing *C.A. White Trucking Co. v. United States*, 555 F.2d 1260, 1264 (5th Cir. 1977)).

<u>The Substantial Evidence Requirement</u>

The "scope of review" provisions of the APA, 5 U.S.C. § 706(2), are cumulative. Thus, an agency action which is not arbitrary or capricious, may in another regard be unsupported by the required substantial evidence. However, the courts of appeals have noted on several occasions that the distinction between the substantial evidence test, 5 U.S.C. § 706(2)(E), and the arbitrary or capricious test, § 706(2)(A), is "largely semantic." *Aircraft Owners and Pilots Ass'n v. FAA*, 600 F.2d 965, 971 n.28 (D.C. Cir. 1979); *Pacific Legal Foundation v. Dep't of Transp.*, 593 F.2d 1338, 1343 n. 35 (D.C. Cir. 1979); *American Public Gas Ass'n v. FPC*, 567 F.2d 1016, 1028-29 (D.C. Cir. 1977); *see Assoc. Indus. V. Dep't of Labor*, 487 F.2d 342, 349-50 (2nd Cir. 1973).

However, the distinctive function of paragraph (E) is to require substantial evidence to be found within the record of *closed-record proceedings* to which it exclusively applies. K. Davis, Administrative Law Treatise § 6:13 512 (2d ed. 1978). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

<u>The Abuse of Discretion Standard</u>

Some discretion is unreviewable and the courts may not exercise authority over such decisions if the agency is to have the intended level of discretion. However, "[i]t is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decision-making." *Bennett v. Spear*, 520 U.S. 154, 172, 117 S.Ct. 1154, 1166, 137 L.Ed. 2d 281 (1997). A court might find abuse of discretion when the decision is made "without rational explanation, or inexplicably departs from established policies." *Diaz-Resendez v. INS*, 960 F.2d 493, 495 (5th Cir. 1992).

    e. Analysis

        1. Whether the Department's Decision to Impose Civil Penalties was arbitrary, capricious, unsupported by substantial evidence or an abuse of discretion.

First, Tengasco argues this Court should set aside the IBLA's decision with directions for no penalties to be imposed. In reviewing the Department's findings, the Court is guided by certain basic principles. The findings of the Department are presumed to be supported by competent evidence, and if so supported are conclusive. *Keele Hair & Scalp Specialists, Inc. v. FTC*, 275 F.2d 18, 21 (5th Cir. 1960).

The relevant departmental regulation, 30 C.F.R. § 250.804(b) provides that:

> [t]he lessee shall maintain records for a period of 2 years for each subsurface and surface safety device installed...These records shall be available for review by a representative of BSEE. The records shall show the present status and history of each device, including dates and details of installation, removal, inspection, testing...

Any violation of the foregoing which "BSEE determines *may* constitute, or constituted, a threat of serious, irreparable, or immediate harm or damage to life (including fish and other aquatic life), property, any mineral deposit, or the marine, coastal, or human environment," may be reviewed for potential civil penalties. 30 C.F.R. § 250.1404(b)(emphasis added). If such a failure described constitutes or constituted a threat of serious, irreparable, or immediate harm or damage to life (including fish and other aquatic life), property, any mineral deposit or the marine, coastal or human environment, a civil penalty may be assessed without regard to the requirement of expiration of a period allowed for corrective action. 43 U.S.C. § 1350 (b)(2).

Tengasco contends there is undisputed evidence in the administrative record showing that the required testing was conducted. "This includes (*i*) direct evidence in the form of both an affidavit and numerous reports by Rhino's operator-foreman who oversaw the required testing and (*ii*) corroborative

evidence in the form of helicopter manifests confirming the visits to the platform for the times at issue."[34]

The Department considered the general travel logs, Walker's affidavit, and reconstructed test result forms; however, concluded that "affidavits and statements from individuals, attesting to compliance with testing requirements are insufficient to constitute the specific, contemporaneous verification of testing that owners and operators are required to maintain and produce upon request within the 2-year time period under 30 C.F.R. § 250.804(b)."[35] Specifically, the Department affirmed the following BSEE findings:

    i.   INC No. P-280 ($40,000) – Tengasco failed to provide testing records for surface controlled subsurface safety valves ("SCSSV") safety devices on four wells for two testing periods (June 9, 2010 – February 23, 2011) in violation of 30 C.F.R. § 250.804(a)(1)(i).[36]

   ii.   INC No. P-283 ($6,000) – Tengasco failed to provide testing records for SCSSV safety devices being used as tubing plugs for a fifth well for two testing periods (June 9, 2010 – February 23, 2011) in violation of 30 C.F.R. § 250.804(a)(1)(iii).[37]

 iii.   INC No. P-303 ($60,000) – Tengasco failed to provide testing records for all level safety high ("LSH") safety devices for the facility for three testing

---

[34] Rec. Doc. No. 25-3 at 8.

[35] *Tengasco, Inc.*, 184 IBLA 367, 380 2014 WL 4261981 (IBLA, June 23, 2014).

[36] Each surface-controlled subsurface safety device installed in a well, including such devices in shut-in and injection wells, shall be testing in place for proper operation when installed or reinstalled and thereafter at intervals not exceeding 6 months.

[37] Each tubing plug installed in a well shall be inspected for leakage by opening the well to possible flow at intervals not exceeding 6 months.

periods (September 1, 2010 – February 23, 2011) in violation of 30 C.F.R. § 250.804(a)(3)(ii).[38]

iv.   INC. No. P-304 ($30,000) – Tengasco failed to provide testing records for all level safety low ("LSL") safety devices for the facility for three testing periods (September 1, 2010 – January 25, 2011) in violation of 30 C.F.R. § 250.804(a)(3)(ii).[39]

v.   INC. No. P-307 ($75,000) – Tengasco failed to provide testing records for all surface safety valve ("SSV") safety devices for the facility for three testing periods (September 1, 2010 – January 25, 2011) in violation of 30 C.F.R. § 250.804(a)(5).[40]

vi.   INC. No. P-308 ($105,000) – Tengasco failed to provide testing records for all flow safety valve ("FSV") safety devices for the facility for three testing periods (September 1, 2010 – January 25, 2011) in violation of 30 C.F.R. § 250.804(a)(6).[41]

vii.   INC. No. P-314 ($35,000)– Tengasco failed to provide testing records for all electronic pressure safety high ("PSH") safety devices for the facility for one testing period (September 1, 2010 – January 25, 2011) in violation of 30 C.F.R. § 250.804(a)(4)(i); and[42]

viii.   INC No. P-315 ($35,000) – Tengasco failed to provide testing records for all electronic pressure safety low ("PSL") safety devices for the facility for one testing period (September 1, 2010 – January 25, 2011) in violation of 30 C.F.R. § 250.804(a)(4)(i).[43]

---

[38] All LSH controls must be tested at least once each calendar month, but at no time will more than 6 weeks elapse between tests.

[39] All LSL controls must be tested at least once each calendar month, but at no time will more than 6 weeks elapse between tests.

[40] All SSV's and USV's shall be tested for operation and for leakage at least once each calendar month, but at no time shall more than 6 weeks elapse between tests.

[41] All flowline Flow Safety Valves (FSV) shall be checked for leakage at least once each calendar month, but at no time shall more than 6 weeks elapse between tests.

[42] All PSH must be tested at least once every 3 months, but at no time may more than 120 days elapse between tests.

[43] All PSL must be tested at least once every 3 months, but at no time may more than 120 days elapse between tests.

**Affidavit, reconstructed reports and travel logs.** Tengasco submitted a February 2012 Affidavit by Randy Walker, a former Rhino employee, attesting to reconstructed reports relating to all device testing at issue, based on his personal knowledge of the events, "his log books and field notes."[44] Tengasco also submitted the aforementioned reconstructed reports for June 2010 through February 2011.[45] Rhino's subpoena response provided the actual safety and compliance inspection report for September 2010, and BSEE reduced the penalties for four pertinent INCs accordingly.[46] The record additionally contains helicopter manifests and flight logs dated from April 11, 2010 to December 24, 2010.[47]

In moving for summary judgment, Tengasco bears the burden of proof in establishing by a *preponderance of the evidence* that the required testing was conducted. The regulations provide that safety system devices shall be successfully inspected and tested by the lessee at specified periods. 30 C.F.R. § 250.804(a)(1)-(12). Additionally, the "lessee shall maintain records for a period of 2 years for each subsurface and surface safety device installed...These records shall show the present status and history of each device, including dates and details of

---

[44] A.R. 354 (Affidavit of Randy Walker).
[45] A.R. 360-465 (Safety and Compliance Inspection Report).
[46] A.R. 551-72, 598.
[47] A.R. 118-168.

installation, removal, inspection, testing...." 30 C.F.R. § 250.804(b).

Tengasco attempts to distinguish the underlying violations from those properly subject to civil penalties by arguing that, at worst, the company violated only the rule at 30 C.F.R. § 250.804(b), which requires the recordation and retention of testing. As the IBLA noted, "§§ 250.804(a) and (b) are part of the same regulation and must be read together. A violation of § 250.804(b) must be analyzed in conjunction with § 250.804(a). A lessee may be charged a civil penalty for not testing a safety device if it cannot show documentation to satisfy § 250.804(b)."[48]

First, although Tengasco contends the record evidence is undisputed, Tengasco fails to point to any specific record documenting the "present status" of each safety device for the periods at issue, as required by 30 C.F.R. § 250.804(b). The BSEEE and IBLA concluded that because these reports were prepared by Mr. Walker at a much later date, they failed to satisfy the "contemporaneous verification of testing" required by 30 C.F.R. § 250.804(b).[49] The travel logs themselves fail to document any testing. According to Walker, these *post-hoc*

---

[48] *Tengasco, Inc.*, 184 IBLA at 380. Otherwise, § 250.804(a) would be unenforceable.
[49] A.R. 611 (Reviewing Officer's Final Decision); *Tengasco, Inc.*, 184 IBLA at 380.

reports were based upon his log books and field notes; however, these items are not contained in the record.[50]

Moreover, with respect to June, July and August 2010, BSEE already possessed actual safety and compliance reports from prior regulatory interactions. Specifically, BSEE observed that the "July 2010 report for the pipeline PSH and PSL sensor document states they were tested at 234 and 73 psi, respectfully, and adjusted to 55 and 25 psi, respectfully.[51] However, the "recompleted" documentation for July 2010 shows no such adjustment.[52] Tengasco acknowledges the discrepancy; however, responds that this single example only relates to two of the eight INCS at issue.[53]

Tengasco argues that the documents it provided satisfy BSEE's standards.[54] To support its claim, Tengasco relies on *Blue Dolphin*, where BSEE's predecessor declared affidavits ineffective evidence "when not supported by corroborative or

---

[50] Tengasco argues that regulations do not impose any such requirement to attach the field notes and logs, and further, that the BSEE reviewing officer failed to subpoena these documents. However, the regulations impose a duty upon Tengasco to maintain and produce records for the devices at issue. Although BSEE could have subpoenaed these documents, BSEE is under no obligation to do so. BSEE exercised its subpoena authority to gain compliance from an uncooperative party, Rhino Offshores, which is not the case with regard to Mr. Walker. Tengasco had ample opportunity to obtain and submit this supporting documentation.

[51] A.R. 598 (BSEE Reviewing Officer's Final Decision); Rec. Doc. 37 at 10 (Exhibit A, noting forty-seven (47) additional inconsistencies between original and reconstructed reports).

[52] A.R. 598 (BSEE Reviewing Officer's Final Decision).

[53] A.R. 181. In an e-mail, Norman Ackermann, of Prime 8 Offshore, LLC,  Tengasco's new contractor, informs the BSEE: "I asked Randy if the numbers changed in his readings and as I understand his reply, there was virtually no changes in the readings...Oct 2010 BSEE: on the Flowline page the pressures Randy wrote down were in the wrong columns. Such as found and adjusted too [sic]. On the 10˝ Williams line the FSV and SDV operation/Auto should be N/A's."

[54] *Rec. Doc.* 23 at 3.

contemporaneous documentation, direct or indirect."[55] The affidavit that was accepted evidence in that case was an affidavit *supported with copies of the original tally sheet of the tests*.[56] BSSE does not have to show that the testing was not done, instead the burden for providing testing documentation is on the lessee for the two year period set out in 30 C.F.R. § 250.804(b).[57] Here, though neither side disputes that the helicopter logs provided by Tengasco show Mr. Walker was flown to the platform on purported dates of testing, they do not rise to the level of the evidence that was accepted in *Blue Dolphin*. The helicopter records do not corroborate whether the tests were conducted, or whether the devices met safety standards required.[58] Furthermore the documents reproduced by Mr. Walker are not contemporaneous or corroborative evidence because they were drafted much later than the initial tests were conducted.

Tengasco's statements about the disparity in penalties assessed in *Blue Dolphin* compared to the current case are also incorrect.[59] The penalties in *Blue Dolphin* were originally $205,200, before being reduced to $61,600 by the Reviewing

---

[55] *Blue Dolphin,* 166 IBLA at 135.

[56] *Id.* at 135 n.1.

[57] *Id.* at 137.

[58] *Blue Dolphin*, 166 IBLA at 137. Without the requirement that documents be kept during the two-year period it would be virtually impossible for MMS to enforce the testing requirements of 30 CFR 250.804(a) in the absence of an express admission by the lessee that the testing was not completed. Thus, affidavits and statements from individuals, which state that the testing was completed, are insufficient to provide documentation of the testing within the two-year time period provided in the regulations.

[59] Rec. Doc. 33 at 2 f.1.

Officer upon receiving additional tubing inspection reports.[60] Blue Dolphin paid $37,600 in fines, and only appealed the remaining $24,000. Therefore, Tengasco's claim that similar violations resulted in higher penalties in this case than those imposed in *Blue Dolphin* is mistaken.

Additionally, Tengasco claims to be statutorily entitled to an opportunity to correct any violation and thus avoid the penalty. Tengasco urges that a violation of a record-keeping requirement, which does not create a threat of harm, precludes the imposition of a civil penalty absent an opportunity to correct the violation. As discussed, Tengasco appears to be operating under the impression that it is being penalized for failing to promptly provide the necessary records upon inspection. The Court notes however, that over the course of more than a year, BSEE cooperated with Tengasco in its attempts to submit additional records.[61] More importantly, and as further discussed below, the BSEE's final order states that INCs were being issued for violations of 30 C.F.R. § 250.804(a)'s testing requirements and that the testing violations "subjected

---

[60] *Blue Dolphin*, 166 IBLA at 133. Reviewing officer examined information Blue Dolphin supplied and revised her assessment based on the additional documentation of the plug report inspections, but not the affidavits and statements.

[61] *See* e.g. A.R. 181; 226-28.

personnel, environment, and equipment to a threat of serious and/or immediate injury or damage."[62]

Under departmental regulations, BSEE determines whether the underlying violation is of the type to which a civil penalty could attach and whether a civil penalty should be assessed in a particular instance. 30 C.F.R. §§ 250.1400 - 250.1409. When as here, a determination is left to the discretion of the agency, the general rule is that the decision should be upheld if there is a reasonable explanation for the agency's decision and a demonstration that a rational connection exists between its findings and the choice it makes. *State of La., ex rel. Guste v. Verity*, 853 F.2d at 327.

The Court's role is not to weigh the evidence pro and con; but rather, to determine whether there exists a rational relationship between the facts and the conclusions made. BSEE, having considered all of the foregoing, ultimately concluded that: (1) the reports at issue were not credible, and (2) those reports *and* the travel logs both failed to document the requisite testing in accordance with 30 C.F.R. § 250.804(b). Mindful of the narrow scope of review, the Court concludes that, based on the administrative record, Defendants considered the relevant factors, and provided a rational explanation for concluding that Tengasco's records failed to evince compliance

---

[62] A.R. 593-96.

with 30 C.F.R. § 250.804(a). In sum, the Court concludes Defendants' decision to impose civil penalties in this case was not arbitrary or capricious, an abuse of discretion, or otherwise unsupported by substantial evidence.

> 2. Whether the Department's Decision to Impose Civil Penalties in the Amount of $376,000 was arbitrary, capricious, unsupported by substantial evidence or an abuse of discretion.

Second, Tengasco argues in the alternative, that this Court should vacate the IBLA's decision and remand the matter for a redetermination and reduction of any penalties, to no more than $3,000 per penalty and no more than four penalties.[63] BSEE has the authority to enact civil penalty procedures applicable to "whenever a lessee, operator or other person engaged in oil, gas, sulphur or other minerals operations in the OCS has a violation." 30 C.F.R. § 250.1400. The safety system devices that should be inspected, and the intervals at which they should be tested, are laid out in statute.[64] 30 C.F.R. § 250.804. Any lessee who fails to comply with any provision, term of a lease, license, or permit, after notice of such failure and expiration of any reasonable period allowed for corrective action, will be liable for a civil penalty.[65]

---

[63] Rec. Doc. No. 25-3 at 6.
[64] Safety system devices shall be successfully inspected and tested by the lessee at the interval specified below or more frequently if operating conditions warrant.
[65] Secretary may assess, collect, and compromise any such penalty.

25

An agency's selection of penalties to effect its policies is an act peculiarly within its institutional powers, therefore the courts review of it is limited. *Newell Recycling Co. v. U.S. E.P.A.,* 231 F.3d 204, 208 (5th Cir. 2000); *see Martex Farms, S.E. v. U.S. E.P.A.,* 559 F.3d 29, 33-4 (1st Cir. 2009); *see also Pepperell Associates v. U.S. E.P.A.,* 246 F.3d 15, 29-30 (1st Cir. 2001).* The agency's penalty determination is given significant deference, and will not be overturned unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Newell Recycling Co.*, 231 F.3d at 208.

Tengasco first challenges the civil penalties imposed on the basis that both the BSEE's and the IDLA's decisions constituted an abuse of discretion because they failed to give any reason for the disparate amounts imposed for the penalties, and the record lacks any explanation for why any penalty above the $3,000 minimum was levied.

BSEE's decision in regards to the amount of penalties assessed follows the guidelines shown in the Civil Penalty Assessment Table.[66] The agency's calculations and enforcement codes are laid out in the Civil Penalty Worksheet.[67] The Table is further broken down into three categories A, B, and C, based on

---

[66] A.R. 264.
[67] A.R. 258-63.

the harm or threat that the violation posed.[68] In this case all violations were in the A category.[69] The violations are further broken down, based on severity, into Enforcement Codes W, C, or S, which reflect warning, component shut-in, or facility shut-in respectively.[70] One INC was assigned a "W" enforcement code while the remaining seven were given "C" enforcement codes.[71] A "W" enforcement code is given when the situation poses no immediate danger to personnel or equipment.[72] A "C" enforcement code is given for a specific piece of equipment or location, when it is determined to be part of an unsafe situation or it poses an immediate danger to personnel or other equipment, and it can be shut-in without affecting the overall safety of the facility.[73]

BSEE breaks down each violation in the Civil Penalty Worksheet, and lists the number of devices, number of intervals, and which categories and incidents of noncompliance existed.[74] For Category "A" violations with a "W" enforcement code, the range of penalties is $3,000-35,000 with a starting assessment point of $10,000.[75] One violation was assigned this rating, and

---

[68] A.R. 264.

[69] A.R. 264.  (Category A is given for: threat of injury, harm or damage to the marine or coastal environment, threat of population, or threat of damage to any mineral deposit or property).

[70] A.R. 264.

[71] A.R. 258.

[72] *See* BSEE National Office Potential Incident of Noncompliance (PINC) List, *available at* http://www.bsee.gov/Inspection-and-Enforcement/Enforcement-Programs/Potential-Incident-of-Noncompliance---PINC/

[73] *Id.*

[74] A.R. 258-263.

[75] A.R. 264.

was assessed the minimum amount, $3,000, due in part from mitigating factors such as Tengasco having no "closed and final" violations and a history of only two INC's in the prior two years.[76] The remaining seven INC's were assigned Category "A" enforcement code "C" violations.[77] This classification has a starting point of $15,000, with the minimum being $5,000 and the maximum being $35,000.[78] From this BSEE once again adjusted all the penalties downward to the minimum possible charge of $5,000.[79] What follows is a breakdown of the revised penalties assessed against Tengasco:

    I.    INC No. P-280 ($40,000) — Four devices at the Category A, Noncompliance C minimum fine of $5,000 for two intervals.

    II.    INC No. P-283 ($6,000) — Category A, Noncompliance W minimum fine of $3,000 for two intervals.

    III.  INC No. P-303 ($60,000) — Four devices at the Category A, Noncompliance C minimum fine of $5,000 for three intervals (reduced from four).

    IV.  INC. No. P-304 ($30,000) — Two devices at the Category A, Noncompliance C minimum fine of $5,000 for three intervals (reduced from four).

    V.    INC. No. P-307 ($75,000) — Five devices at the Category A, Noncompliance C minimum fine of $5,000 for three intervals (reduced from four).

    VI.  INC. No. P-308 ($105,000) — Eighteen devices at the Category A, Noncompliance C minimum fine of $5,000 for

---

[76] A.R. 212-13, 209.
[77] A.R. 258.
[78] A.R. 264.
[79] A.R. 598.

three intervals (reduced from four, and per interval fine capped at $35,000).

VII. INC. No. P-314 ($35,000) — Eight devices at the Category A, Noncompliance C minimum fine of $5,000 for one interval (per interval fine capped at $35,000).

VIII. INC. No. P-315 ($35,000) — Eight devices at the Category A, Noncompliance C minimum fine of $5,000 for one interval (per interval fine capped at $35,000).

While Tengasco is correct in asserting that no actual injury occurred, BSEE assessed seven of the violations as enforcement code "C" which subjects them to the higher mandatory minimum of $5,000. Only one of the violations was eligible to receive a $3,000 minimum fine. After applying mitigating factors, such as Tengasco's prior record of compliance, BSEE applied the minimum penalty to all eight charges multiplied by the testing intervals.[80] However, BSEE determined that in seven instances, the testing violations constituted an immediate threat to personnel or equipment. BSEE has provided ample evidence in the record to show both its reasoning behind imposing the penalties and the amounts assessed.

Next, Tengasco challenges BSEE's decision to assess penalties based on the number of devices that Tengasco allegedly

---

[80] *See* BSEE National Office Potential Incident of Noncompliance (PINC) List, *available at* http://www.bsee.gov/Inspection-and-Enforcement/Enforcement-Programs/Potential-Incident-of-Noncompliance---PINC/

failed to test per period.[81] Tengasco claims it should only be penalized once per testing period, rather than multiple times, because "if a violation occurred in this case, it was the failure to keep proper records of testing rather than the failure to actually test the devices."[82] As previously discussed, BSEE is not penalizing Tengasco for violations of record-keeping, BSEE is penalizing Tengasco for lack of verifiable testing.[83]

The regulations laid out in statute require periodic testing for each device. 30 C.F.R. § 250.804. BSEE asserts that "[t]he plain meaning of the regulation is that each failure to test each device as required in each time period constitutes a single, separate violation."[84] When there is a gap left in the administration of a congressionally created program by Congress, either implicitly or explicitly, deference is given to the administrative agencies reading of the statue. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984). The question for the Court is whether the agency's answer is based on a permissible construction of the statute. *Id.* In this case BSEE applies the violation to every device that was not tested, for each time period, assessing a

---

[81] Rec. Doc. 25-3 at 17-8.
[82] Rec. Doc. 25-3 at 17-8.
[83] Rec. Doc. 28-5 at 19-20.
[84] *Tengasco, Inc.,* 184 IBLA 367, 381 (2014).

penalty for each one individually.[85] Nothing in the statute reflects a reading contrary to BSEE's own interpretation and implementation of the rules.

Lastly, Tengasco argues the penalty amount should have been reduced based on the September 2010 Safety and Compliance Inspection Report. Where Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy "the relation of remedy to policy is peculiarly a matter for administrative competence." *Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 185 (1973); *quoting American Power Co. v. SEC*, 329 U.S. 90, 112, 67 S. Ct. 133, 146 (1946). Tengasco claims that because the September 2010 report states that SCSSV testing occurred on June 14, 2010, and the helicopter logs confirm that June 14 was the "Date of inspection" for the platform, this shows that the tests were done for that interval.[86] The Court has discussed at length and dismissed this final argument, on the basis that the reports fail to satisfy the 30 C.F.R. § 250.804(b) testing requirement.

## III.  CONCLUSION

In moving for summary judgment, Tengasco has not carried its burden. For the reasons set forth above, the court

---

[85] AR. 258-263.
[86] Rec. Doc. 25-3, at 18.

determines that Defendants' decision to impose civil penalties in the amount of $386,000.00 for failure to provide testing records required by law, was not arbitrary, capricious, an abuse of discretion, or an abuse of due process. The court finds that based on the above, there remain no genuine issues of material fact. The court therefore grants Defendants' Motion for Summary Judgment and upholds the Defendants' imposition of civil penalties.

As the court has considered the cross-motions for summary judgment *in tandem,* and granted Defendants' summary judgment motion, granting Plaintiff's cross-motion for summary judgment, which was also considered, would be totally inconsistent with the court's analysis. Accordingly, the court denies Plaintiff's Motion for Summary Judgment. Plaintiff's case is dismissed. Final judgment will issue by separate document as required by Fed. R. Civ. P. 58.

New Orleans, Louisiana, this 14th day of July, 2015.

_____

UNITED STATES DISTRICT JUDGE